UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br>YOEL INY, et al.,<br>　　　　　　　　　　Defendants. | Case No. 2:11-cv-01777-MMD-VCF<br><br>ORDER<br><br>(Plf's Motion to Dismiss Counterclaim – dkt. no. 61) |
| YOEL INY, et al.,<br>　　　　　　　　　　Counterclaimants,<br>　v.<br>BRANCH BANKING AND TRUST COMPANY,<br>　　　　　　　　　　Counterdefendant. | |

**I.　SUMMARY**

Before the Court is Plaintiff/Counterdefendant Branch Banking and Trust's ("BB&T") Motion to Dismiss Counterclaim ("Motion"). (Dkt. no. 61.) For the reasons set out below, the Motion is granted.

**II.　BACKGROUND**

BB&T brings this action against Defendants/Counterclaimants Yoel Iny, individually and as Trustee of the Y&T Iny Family Trust, Noam Schwartz, individually and as Trustee of the Noam Schwartz Trust, and D.M.S.I., LLC (also referred to as

"Guarantors"). BB&T filed the Amended Complaint on February 28, 2012. (Dkt. no. 16.) The Amended Complaint alleges the following. On January 11, 2007, GAC Storage Lansing, LLC ("GAC Lansing"), executed and delivered a promissory note ("Note") secured by a deed of trust to Colonial Bank, N.A. (*Id.* at 3.) Guarantors executed and delivered a guarantee as to the payment of all amounts due under the Note to Colonial Bank, N.A. (*Id.*) Colonial Bank, an Alabama banking corporation, succeeded Colonial Bank, N.A and was closed by the State Banking Department of the State of Alabama. (*Id.* at 4.) The Federal Deposit Insurance Corporation ("FDIC") was named as receiver in order to liquidate and distribute Colonial Bank's assets. (*Id.*) FDIC assigned all of its right, title and interest in the loan documents related to the Note to BB&T. (*Id.*) BB&T thus became the successor in interest and holder of the Note. (*Id.*) Borrower GAC Lansing failed to pay the outstanding balance of the Note by its maturity date of July 29, 2009. (*Id.*) On or about June 16, 2011, BB&T sent a letter to GAC Lansing and the Guarantors demanding that they cure the default but they failed to do so. (*Id.* at 4-5.) The Amended Complaint asserts claims against the Guarantors for breach of guaranty and breach of the covenant of good faith and fair dealing. (*Id.* at 5-6.)

Guarantors filed an Answer to the Amended Complaint and Counterclaim ("Counterclaim"). (Dkt. no. 57.) They assert that from late 2009 to mid-2011 representatives of BB&T "explicitly promised that BB&T would provide [Guarantors] with adequate time and opportunity to propose and implement a real estate property action plan to address and work-out certain Colonial Bank loans" including the loan to GAC Lansing. (*Id.* at 10.) Guarantors refer to this promise as the "Work-out Agreement" and allege that they spent time and money carrying out the agreement and, in return, "BB&T orally agreed to forbear from enforcing certain rights under the GAC Storage Lansing Loan and otherwise refrain from foreclosing on the property securing said Loan." (*Id.* at 11.) Guarantors assert claims of breach of oral contract and detrimental reliance/promissory estoppel against BB&T. (*Id.* at 11–13.)

///

1  BB&T moved to dismiss the Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6)
2  (dkt. no. 61), Guarantors filed an opposition (dkt. no. 62) and BB&T filed a reply in further
3  support of the Motion (dkt. no. 63).

4  **III. DISCUSSION**

5      **A. Legal Standard**

6  A court may dismiss a pleading for "failure to state a claim upon which relief can
7  be granted." Fed. R. Civ. P. 12(b)(6). A properly pled counterclaim must provide "a short
8  and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.
9  Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8
10 does not require detailed factual allegations, it demands more than "labels and
11 conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v.
12 Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
13 "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550
14 U.S. at 555. Thus, to survive a motion to dismiss, a counterclaim must contain sufficient
15 factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at
16 678 (internal citation omitted).

17 In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to
18 apply when considering motions to dismiss. First, a district court must accept as true all
19 well-pled factual allegations; however, legal conclusions are not entitled to the
20 assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action,
21 supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district
22 court must consider whether the factual allegations in the counterclaim allege a plausible
23 claim for relief. *Id.* at 679. A counterclaim is facially plausible when it alleges facts that
24 allow a court to draw a reasonable inference that the counterdefendant is liable for the
25 alleged misconduct. *Id.* at 678. Where the counterclaim does not permit the court to infer
26 more than the mere possibility of misconduct, the counterclaim has "alleged—but not
27 shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted).
28 ///

When the counterclaim has not crossed the line from conceivable to plausible, the counterclaim must be dismissed. *Twombly*, 550 U.S. at 570.

A counterclaim must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

### B. Analysis

#### 1. Standing

BB&T argues that Guarantors do not have standing to assert the Counterclaim because they were not parties to the loan documents that included the rights in and to the property, such as the Note and security agreement. BB&T asserts that the Guarantors were only parties to the guarantee and only borrower GAC Lansing had an actual, direct interest in the property. (Dkt. no. 61 at 9.) BB&T points out that GAC Lansing, as a result of a separate bankruptcy proceeding, released BB&T from any liability resulting from claims related to the underlying loan and thus argues that Guarantors should not be able to assert claims based on the underlying loan when the borrower cannot. (*Id.* at 11.) Lastly, BB&T argues that Guarantors' claims are derivative and BB&T has not suffered any damages with respect to their claims. (*Id.* at 12.)

"To have standing to sue in federal court, a plaintiff must allege such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citations and internal quotations omitted). Thus, Guarantors must "demonstrate that [they have] suffered an injury-in-fact, that the injury is traceable to [BB&T's] actions, and that the injury can be redressed by a favorable decision." *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). As the standing issue is raised before the Court in a motion to dismiss, the Court must accept as true all material allegations of the Counterclaim, and must construe the Counterclaim in favor of the claimants. *Thomas*, 572 F.3d at 760 (citation

4

omitted). In addressing the issue of standing, the Court will not consider whether claimants actually state a claim. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("Failure to state a claim is a defect that does not affect a court's jurisdiction under Article III.")

The Court finds that Guarantors have standing to assert the Counterclaim. The Guarantors are not seeking to enforce any claims or rights that belong, or belonged, to GAC Lansing. The Counterclaim asserts that Guarantors were parties to an oral contract in which BB&T agreed to refrain from enforcing certain collection rights in return for the Guarantors' performance of various tasks. The Counterclaim states that the Guarantors performed these tasks in reliance on the contract and on promises and assurances allegedly made by BB&T to Guarantors, but BB&T pursued collection action anyway. Guarantors seek damages related to the time and money it took for them to perform said tasks. (*See* dkt. no. 57 at 12.) It is sufficient for the Court to conclude, based on these allegations, that Guarantors have alleged a personal stake in the outcome of this controversy.

**2. Breach of Contract**

BB&T argues that Guarantors' breach of contract claim is void under the Nevada statute of frauds. In Nevada, the statute of frauds precludes enforcement of an oral agreement when, by its terms, the agreement cannot be performed within one (1) year. *Edwards Indus., Inc. v. DTE/BTE, Inc.*, 923 P.2d 569, 573 (Nev. 1996) (*citing* NRS 111.220(1)). Guarantors argue that the Work-out Agreement is not void under the statute of frauds because it is capable of being fully performed within a year of its execution. (Dkt. no. 62 at 9 (*citing Stanley v. A. Levy & J. Zentner Co.*, 112 P.2d 1047, 1052 (Nev. 1941)). The Court disagrees with Guarantors and finds the alleged oral contract is void under the statute of frauds.

The alleged oral contract is vague and ill-defined. The Counterclaim states that Guarantors agreed to carry out certain unidentified tasks to "work-out" certain loans and BB&T agreed to "forbear from enforcing certain rights under the [GAC Lansing loan] and

otherwise refrain from foreclosing on the property securing said [l]oan." (Dkt. no. 57 at 10-11.) The terms of the agreement, as characterized by Guarantors in the Counterclaim, give no indication of a timeframe for satisfaction of BB&T's obligation and do not provide the specific terms of BB&T's performance. Based on the facts and allegations provided by Guarantors, the Court concludes that the alleged oral contract appears to have burdened BB&T with an indefinite and ongoing obligation that could not be fully performed within one (1) year. Indeed, Guarantors allege that BB&T first approached them with the Work-out Agreement on or about late 2009, and breached the Work-out Agreement by refusing payment and pursuing collection actions on or about July/August 2011. (*Id.*) In Guarantors' view, therefore, BB&T had to forbear from enforcing its rights for approximately two (2) years at least. These circumstances suggest that the parties did not conceive of performance being completed within one (1) year. *See Stanley*, 112 P.2d at 1052 ("[T]he possibility of performance which would take an agreement out of the statute of frauds must be such as could fairly and reasonably be said to have been within the contemplation of the parties. An unforeseen or remote possibility will not rescue the agreement from invalidity.")

The Court concludes that the alleged oral contract between BB&T and Guarantors is void under the Nevada statute of frauds as it was not capable of being performed within one (1) year.

### 3. Promissory Estoppel

"To establish promissory estoppel four elements must exist: (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped." *Pink v. Busch*, 691 P.2d 456, 459-60 (Nev. 1984) (*citing Cheqer, Inc. v. Painters & Decorators Joint Comm., Inc.*, 655 P.2d 996, 998–99 (Nev. 1982)). "The doctrine of promissory estoppel, which embraces the concept of detrimental reliance, is

intended as a substitute for consideration, and not as a substitute for an agreement between the parties." *Vancheri v. GNLV Corp.*, 777 P.2d 366, 421 (Nev. 1989) (citations omitted). "Accordingly, the first prerequisite of the agreement is a promise." *Id.* (citation omitted). A promise that is "'vague, general or of indeterminate application'" is not enforceable. *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 446 (9th Cir. 1992) (*quoting Hass v. Darigold Dairy Prods. Co.*, 751 F.2d 1096, 1100 (9th Cir. 1985)).

Guarantors allege that BB&T promised to "provide [Guarantors] with adequate time and opportunity to propose and implement a real estate property action plan to address and work-out certain Colonial Bank loans" and promised to "forbear from enforcing certain rights under the [GAC Lansing loan] and otherwise refrain from foreclosing on the property securing said [l]oan." (Dkt. no. 57 at 10–11.) These alleged promises are vague, general and of indeterminate application. The terms and requirements of the "Work-out Agreement" are not provided and the duration and extent of the parties' obligations is left to the Court's imagination. Guarantors' assertion that a promise existed is conclusory and they fail to provide sufficient factual allegations or specific terms to support their claim. At best, the allegations in the Counterclaim give rise to an inference of the mere possibility of misconduct, but that is not sufficient to state a claim. *See Iqbal*, 556 U.S. at 679. The Court finds that Guarantors fail to allege a claim for promissory estoppel.

## IV. CONCLUSION

It is therefore ordered Plaintiff/Counterdefendant's Motion to Dismiss Counterclaim (dkt. no. 61) is granted. Defendants/Counterclaimants' Counterclaim (dkt. no. 57) is dismissed.

DATED THIS 6th day of June 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE