UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>YOEL INY, *et al.*,<br><br>Defendants. | Case No. 2:11-cv-01777-MMD-VCF<br><br>ORDER<br><br>(Pl.'s Motion for Partial Summary Judgment – dkt. no. 85;<br>Pl.'s Motion for Hearing — dkt. no. 86;<br>Defs.' Motion for Summary Judgment — dkt. no. 87) |

## I. SUMMARY

This case involves an alleged breach of guaranty after the borrower defaulted, sought Chapter 11 protection and sold the property that secured the debt pursuant to an order from the bankruptcy court. Before the Court are two competing motions for summary judgment (dkt. nos. 85, 87). Plaintiff Branch Banking and Trust Company moves for partial summary judgment on its claim for breach of a guaranty ("Plaintiff's Motion"). (Dkt. no. 85.) Plaintiff also requests a valuation hearing. (Dkt. no. 86.) Defendants[1] seek summary judgment on all of Plaintiff's claims ("Defendants' Motion"). (Dkt. no. 87.) The Court has reviewed the applicable response and reply briefs. (Dkt. nos. 91, 92, 99, 100.) Additionally, the Court has considered Defendants' evidentiary

[1]Defendants are Yoel Iny, individually and as trustee of the Y&T Family Trust; Noam Schwartz, individually and as trustee of the Noam Schwartz Trust; D.M.S.I., L.L.C.; and Does 1 through 10.

objection to a declaration submitted in support of Plaintiff's Motion (dkt. no. 90), as well as Plaintiff's response (dkt. no. 98) and Defendants' reply (dkt. no. 101). The Court has also reviewed supplemental briefing filed by both parties (dkt nos. 104, 109, 110). Finally, the Court has considered oral arguments offered during a hearing held on October 8, 2015. (Dkt. no. 115.) For the reasons discussed below, Plaintiff's Motion (dkt. no. 85) and request for a valuation hearing (dkt. no. 86) are granted, Defendant's Motion (dkt. no. 87) is denied, and the evidentiary objections are overruled.

## II. BACKGROUND

### A. Factual Background

On January 11, 2007, borrower GAC Storage Lansing, LLC ("the Borrower") executed a promissory note ("Note") and a Construction Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Mortgage") with creditor Colonial Bank, N.A. (Dkt. no. 85 at 3–4; dkt. no. 57 at 3.) The Note had a principal amount of $4,333,000; the Mortgage encumbered real property in Illinois ("the Property").[2] (Dkt. no. 85 at 3-4.) The same day, Defendants Yoel Iny (individually and as trustee of the Y&T Family Trust), Noam Schwartz (individually and as trustee of the Noam Schwartz Trust), and D.M.S.I., L.L.C. executed a guarantee ("Guarantee") with Colonial Bank, N.A. (*Id.*; dkt. no. 57 at 3.)

In 2009, Colonial Bank — which Plaintiff alleges was a successor to Colonial Bank, N.A., following the entity's transformation from a national banking association to a state banking corporation — was closed by the Alabama State Banking Department. (*See* dkt. no. 85-2 at 13-23.) The Federal Deposit Insurance Corporation ("FDIC") became the receiver to liquidate and distribute Colonial Bank's assets. (*Id.* at 13.) The FDIC, in turn, assigned some of those assets to Plaintiff. (*Id.*) Plaintiff contends that the

[2]Defendants filed a separate evidentiary objection to Plaintiff's Motion, contending that one of Plaintiff's declarations and its accompanying documents contain various evidentiary problems. (Dkt. no. 90.) Although the Court cites Plaintiff's Motion and its attachments in outlining the background facts, the Court notes that Defendants appear to dispute the admissibility of evidence upon which Plaintiff relies. The Court addresses Defendants' evidentiary objections below.

Borrower's Note, Mortgage, and Guarantee were among those assets. (Dkt. no. 85 at 4–5; dkt. no. 85-2 at 13–15.)

The Borrower defaulted on the Note; it subsequently filed for Chapter 11 bankruptcy on October 7, 2011. (Dkt. no. 85 at 5; dkt. no. 85-3 at 26.) A week later, on October 18, 2011, Plaintiff initiated a judicial foreclosure action in Illinois. (Dkt. no. 91-2 at 9.) In light of the Borrower's bankruptcy filing, the Illinois court stayed Plaintiff's judicial foreclosure action. (*Id.)* Although Plaintiff sought relief from the stay in February 2012 (*id.* at 4-19), Plaintiff eventually reached a settlement agreement with the Borrower in the bankruptcy action. (Dkt. no. 87-2.) The settlement agreement — which the bankruptcy court approved in March 2013 — included certain procedures for selling the Property by the Borrower. (*Id.*) In July 2013, the bankruptcy court approved the sale of the Property for $3,425,000, finding that the Borrower had marketed and entertained bids for the Property according to the settlement terms. (Dkt. no. 87-3.) The Property's sale price was lower than the balance on the Note.

**B. Procedural Background**

Plaintiff initiated this action against Defendants as guarantors on November 4, 2011. (Dkt. no. 1.) Defendants moved to stay the proceedings pending decisions on relevant state statutes from the Nevada Supreme Court. (Dkt. no. 39.) The Court granted a stay on December 19, 2012 (dkt. no. 43); almost a year later, on November 26, 2013, the Court lifted the stay pursuant to Defendants' motion. (Dkt. nos. 48, 49.)

The parties then agreed to give Defendants leave to file a second answer to the Amended Complaint, in which Defendants asserted a counterclaim alleging that Plaintiff had promised to "address and work-out certain Colonial Bank loans." (Dkt. no. 57 at 10.) Plaintiff filed a motion to dismiss the counterclaim (dkt. no. 61), which the Court granted, finding that the oral agreement at issue in the counterclaim was unenforceable under the statute of frauds. (Dkt. no. 70.) The Court further held that Defendants had failed to state a claim for promissory estoppel in their counterclaim. (*Id.* at 6-7.)

///

The Court now addresses the parties' motions for summary judgment (dkt. nos. 85, 87) and Plaintiff's request for a valuation hearing (dkt. no. 86).

**III. MOTIONS FOR SUMMARY JUDGMENT**

The parties' motions for summary judgment raise the same legal questions as to whether Defendants, as guarantors, can invoke certain provisions of Nevada's anti-deficiency statutes in light of the Property's sale in the bankruptcy proceedings. The Court will therefore address the legal issues before turning to any factual disputes.

**A. Legal Standard**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric*., 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence

negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**B. Discussion**

**1. Evidentiary Objection**

As a threshold matter, the Court overrules Defendants' evidentiary objections to the Declaration of Peter Nugent ("Nugent Declaration") (dkt. no. 85-1). (*See* dkt. no. 91 at 14-15; dkt. no. 90.) Defendants argue that the Nugent Declaration fails to authenticate its various attachments because Mr. Nugent lacks personal knowledge required to authenticate those documents. (Dkt. no. 91 at 14-15.) Indeed, "unauthenticated documents cannot be considered in a motion for summary judgment." *Orr*, 285 F.3d at 773. A document must be authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (quoting Fed. R. Evid. 901(a)). A witness can gain personal knowledge of a document if he or she "wrote it, signed it, used it, or saw others do so." *Orr*, 285 F.3d at 774 n.8 (quoting 31 Wright & Gold, *Federal Practice & Procedure: Evidence* § 7106, 43 (2000)).

///

The Court finds that Mr. Nugent has sufficiently authenticated the loan documents attached to his declaration. Mr. Nugent asserts that he "direct[s] the maintenance and storage of [Plaintiff's] books, records, and files as they relate to" the loan at issue in this case. (Dkt. no. 85-1 at 3.) He further asserts that he is "familiar with [Plaintiff's] books, records, and files as they relate to the loan sued upon herein," and that he is "familiar with, and [has] gained knowledge of, the business records [and] the books, records, and files [that Plaintiff] acquired from the FDIC." (*Id.*) These statements indicate that Mr. Nugent has the personal knowledge required to authenticate the disputed documents.

**2. Legal Disputes**

The parties' Motions collectively raise three main threshold legal questions. First, are Defendants entitled to assert the equitable defenses enumerated in NRS § 40.495(3), which are available to guarantors when a creditor "maintains an action to foreclose or otherwise enforce a mortgage or lien"? NRS § 40.495(3), *amended by* 2015 Nev. Stat., Ch. 518, Sec. 13 (Westlaw).[3] Second, assuming those equitable defenses are available, can Defendants argue that Plaintiff is time-barred from seeking a deficiency judgment under NRS § 40.455(1), which requires a creditor to seek a deficiency judgment "within 6 months after the date of the foreclosure sale or the trustee's sale"? NRS § 40.455(1), *amended by* 2015 Nev. Stat., Ch. 518, Sec. 8 (Westlaw). Finally, is Plaintiff's recovery limited by NRS § 40.455(1)(c), which, at the time of the Property's bankruptcy sale, limited the amount that a successor creditor could recover through a deficiency judgment? 2011 Nev. Stat. 1743.[4]

---

[3]Sections 40.495 and 40.455 were recently amended. 2015 Nev. Stat., Ch. 518, Secs. 8, 13. (Westlaw). The 2015 amendments reflect changes to the definition of "foreclosure sale" in another section of the amending act. These amendments do not affect the analysis in this case, where the sale of the Property took place in 2013. *See Sandpointe Apartments v. Eighth Judicial Dist. Court*, 313 P.3d 849, 851, 857–59 (Nev. 2013) (concluding that a different anti-deficiency statute passed in 2011 could apply only prospectively in light of a strong presumption against retroactive application).

[4]Section 40.459 was amended and reorganized in May 2015. *See* 2015 Nev. Stat., Ch. 149, Sec. 1 (Westlaw) (codified as amended at NRS § 40.459). Subsection (1)(c) now appears in NRS § 40.459(3)(c), which limits a successor creditor's recovery after obtaining a deficiency judgment on a "property upon which the debtor, guarantor or surety maintains his or her principal residence." NRS § 40.459(3)(c).

**a. Equitable Defenses Under NRS § 40.495(3)**

Nevada's anti-deficiency statutory scheme provides certain protections for guarantors. Section 40.495 allows a creditor to bring an action separate from a foreclosure action against a guarantor to enforce "that person's obligation to pay, satisfy or purchase all or part of an indebtedness or obligation secured by a mortgage or lien upon real property."[5] NRS § 40.495(2). The statute further provides that "[i]f the obligee maintains an action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby, the guarantor . . . may assert any legal or equitable defenses provided pursuant to the provisions of NRS 40.451 to 40.4639, inclusive." NRS § 40.495(3). Defendants contend that they are entitled to assert equitable defenses that appear in NRS §§ 40.451 to 40.4639. Plaintiff, conversely, argues that the Property's sale — which occurred during the Borrower's bankruptcy proceeding — does not constitute "maintain[ing] an action to foreclose or otherwise enforce a mortgage or lien." NRS § 40.495(3).

In *Lavi v. Eighth Judicial District Court*, 325 P.3d 1625 (Nev. 2014), the Nevada Supreme Court explained that the defenses described in NRS § 40.495(3) applied to an action that a creditor initiated against a guarantor before foreclosing on the underlying property. The court explained that "[a]lthough [the creditor] commenced an action on the guaranty first under NRS 40.495(2), once it foreclosed on the property and sought a deficiency judgment, it was required to satisfy [certain timing requirements in] NRS 40.455." *Id.* at 1268. The court further reasoned that this reading of NRS § 40.495(3) "can be fairly harmonized with" NRS § 40.495(4), a recently added subsection that requires courts to determine a property's fair market value if a creditor brings an action against a guarantor before a foreclosure sale. *Lavi*, 325 P.3d at 1268. The *Lavi* court

---

[5] A creditor may bring such a separate action so long as a guarantor has waived the so-called one-action rule, which limits creditors to bringing one action to satisfy debt. NRS § 40.430, *amended by* 2015 Nev. Stat., Ch. 518, Sec. 5.5 (Westlaw); *Lavi v. Eighth Judicial Dist. Court*, 325 P.3d 1265, 1267–68 (Nev. 2014). The parties do not appear to dispute that the one-action rule has been waived.

thus made clear that a guarantor can assert equitable defenses even where a creditor goes after a guarantor before foreclosing on the underlying property. But the case did not determine whether the sale of a property pursuant to a Chapter 11 bankruptcy gives rise to the same equitable defenses.

Defendants have not demonstrated that Plaintiff "maintain[ed] an action to foreclose or otherwise enforce a mortgage or lien" against the Property.[6] NRS § 40.495(3). Defendants point to the foreclosure action that Plaintiff commenced in Illinois about a week after the Borrower filed for bankruptcy as evidence that Plaintiff maintained a foreclosure action. That action, however, was subject to an automatic stay from its outset. The Court is not persuaded by Defendants' argument that commencing a foreclosure action during the pendency of a bankruptcy proceeding qualifies as "maintain[ing] an action to foreclose." NRS § 40.495(3). It is undisputed that the Property was sold in the context of the Borrower's bankruptcy proceeding, which the Borrower had initiated. Plaintiff's participation in the Borrower's bankruptcy proceeding was defensive and for the purposes of protecting its creditor's lien. Moreover, the fact that the Property's sale was the result of a settlement agreement between Plaintiff and the Borrower does not transform the sale into a creditor-driven action to enforce a mortgage. *Cf. U.S. Bank Nat'l Ass'n v. Palmilla Dev. Co., Inc.*, 343 P.3d 603, 606-07 (Nev. 2015) (holding that a receiver sale in an action instituted by a creditor qualified as a foreclosure sale); *Walters v. Eighth Judicial Dist. Court*, 263 P.3d 231, 232–33 (Nev. 2011) (applying equitable defenses to a trustee's sale). Nor did Plaintiff's attempt to seek relief from the automatic stay. Indeed, Plaintiff's settlement agreement with the Borrower indicates that Plaintiff's attempt to proceed in a separate foreclosure action was unsuccessful, and that the action was not maintained. In short, Plaintiff's initiation of the foreclosure action that

[6]Both parties rely on unpublished decisions by the Nevada Supreme Court to argue their respective positions. Under Nevada Supreme Court Rule 123, "[a]n unpublished opinion or order of the Nevada Supreme Court shall not be regarded as precedent and shall not be cited as legal authority except" in instances not applicable here. Accordingly, the Court will not address those opinions here.

was then subject to an automatic stay does not satisfy NRS § 40.495(3)'s requirement that Plaintiff "maintain[] an action to foreclose or otherwise enforce a mortgage or lien." Defendants have not shown that they are entitled to the affirmative defenses enumerated NRS § 40.495(3).

**b. Six-Month Limitation Under NRS § 40.455(1)**

Even assuming that Plaintiff's filing of the foreclosure action triggered NRS § 40.495(3), the Court nevertheless finds that the six-month limitation period in NRS § 40.455(1) is inapplicable to the sale here. Section 40.455(1) instructs courts to award a deficiency judgment if, "upon application of the judgment creditor or the beneficiary of the deed of trust within 6 months after the date of the foreclosure sale or the trustee's sale held pursuant to NRS 107.080, respectively," the amount of indebtedness exceeds the proceeds of the sale. NRS § 40.455(1). Defendants contend that Plaintiff failed to make a requisite application for a deficiency judgment within six months of the Property's sale. Plaintiff insists that NRS § 40.455(1) does not apply to the Property's sale because the provision covers only foreclosure and trustee's sales and the Property was not sold through either a foreclosure sale or a trustee's sale. The Court agrees with Plaintiff.

Because neither party contends that a trustee's sale has occurred in this case (*see* dkt. no. 87 at 6), the Court need only determine whether the Property's sale qualifies as a foreclosure sale. As another court in this district recently noted, "[a] sale by the debtor-in-possession in bankruptcy is not a foreclosure sale under Nevada law," which defines a foreclosure sale as "'the sale of real property to enforce an obligation secured by a mortgage or lien on the property.'" *Branch Banking & Trust Co. v. Rad*, No. 2:14-cv-01947-APG, 2015 WL 5664393, at *7 (Sept. 24, 2015) (quoting NRS § 40.462(4)). Here, just as in *Rad*, the Property was sold as part of the Borrower's bankruptcy proceeding, not through a creditor-driven action to enforce the Mortgage. *See id.* at *3.

During oral argument, Defendants attempted to distinguish *Rad* by pointing out that the creditor in that case had objected to the sale in the bankruptcy proceeding,

whereas the Property in this case was sold pursuant to a settlement agreement between Plaintiff and the Borrower. But Defendants have not clarified why the fact that Plaintiff had settled with the Borrower makes any difference — the Property was still sold as part of the Borrower's bankruptcy proceeding, not through a creditor-directed enforcement action. *See In re DRW Prop. Co 82*, 57 B.R. 987, 992 (Bankr. N.D. Tex. 1986) ("Unquestionably, a foreclosure sale is not encompassed within a Section 363 [federal bankruptcy] sale."). Under Defendants' logic, a guarantor could gain undue benefit from a borrower's bankruptcy filing by asserting equitable defenses that protect against dilatory tactics that creditors might employ in a foreclosure action. Defendants' attempt to recast a bankruptcy sale as a creditor's foreclosure action is unpersuasive. *See Star Phoenix Mining Co. v. W. One Bank*, 147 F.3d 1145, 1147 n.2 (9th Cir. 1998) ("It is also well-established that the discharge of the principal debtor in bankruptcy will not discharge the liabilities of codebtors or guarantors.")) The Property's sale by the Borrower in their bankruptcy proceedings, even though made pursuant to an agreement with Plaintiff, is not a foreclosure sale that triggers the six-month limitation period in NRS § 40.455(1). Accordingly, the Court finds that the six-month period in NRS § 40.455(1) does not apply here.

**c. Valuation Cap Under NRS § 40.459(1)(c)**

Defendants further argue that Plaintiff cannot recover a deficiency judgment because Defendants never identified the amount of consideration they paid for the right to obtain a deficiency judgment in this matter. Defendants point to NRS § 40.459(1)(c), which, at the time of the Property's sale in July 2013, provided:

> If the person seeking the judgment acquired the right to obtain the judgment from a person who previously held that right, [a deficiency judgment could be limited to] the amount by which the amount of the consideration paid for that right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold, whichever is greater.

///

///

2011 Nev. Stat. 1743. If this provision applies here, then Plaintiff would not recover a deficiency judgment unless Plaintiff paid more to acquire the right to a deficiency judgment than the Property's sale price or fair market value.

This Court recently held that the federal Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1811 *et seq.*, preempts NRS § 40.459(1)(c). *Branch Banking & Trust Co. v. Rossal*, No. 2:12-cv-01298-MMD-GWF (Sept. 29, 2015). There, the Court was persuaded by reasoning in *Munoz v. Branch Banking*, 348 P.3d 689, 692–93 (Nev. 2015), in which the Nevada Supreme Court determined that NRS § 40.459(1)(c) interferes with the FDIC's statutory obligations to protect depositors by disposing of a failed bank's assets. The same reasoning applies here. Plaintiff has offered evidence demonstrating that it obtained the right to seek a deficiency judgment from the FDIC, which had distributed that asset in its role as receiver for Colonial Bank. (*See* dkt. no. 85-2 at 12–25.) Applying NRS § 40.459(1)(c) in this case would interfere with the FDIC's ability to liquidate and distribute Colonial Bank's assets, and, in turn, protect depositors.

Coupled with Plaintiff's evidence showing a difference between the Property's sale price and the amount of indebtedness at the time of sale, the Court finds that Plaintiff has established that a deficiency exists. (*See, e.g.*, dkt. no. 85-1 at 8 (stating that the Note's principal amount is $4,333,000); dkt. no. 87-3 at 4 (order approving sale of Property for $3,425,000). Defendants, moreover, have not shown that they are entitled to summary judgment on this issue.

**3. Factual Disputes Regarding Defendants' Affirmative Defenses**

Finally, Defendants urge the Court to deny Plaintiff's Motion because factual disputes allegedly exist with regard to Defendants' affirmative defenses. Defendants offer testimonial evidence from two witnesses suggesting that an oral agreement existed between the parties. (Dkt. no. 91 at 16–17.) The Court finds that this evidence is insufficient to create a genuine dispute of material fact. *See Bhan*, 929 F.2d at 1409. In June 2014, the Court dismissed a counterclaim Defendants had raised, finding that the

alleged oral agreement between the parties was unenforceable under the statute of frauds. (Dkt no. 70.) The only evidence Defendants have offered to demonstrate a genuine issue of material fact implicates the same alleged oral agreement. In light of the Court's earlier dismissal order, the Court finds that no genuine dispute of material fact exists. The Court will therefore grant Plaintiff's Motion.

## IV. MOTION FOR VALUATION HEARING

Plaintiff moves for a valuation hearing pursuant to NRS § 40.495(4). (Dkt. no. 86.) Because the Court grants summary judgment for Plaintiff on its claim for breach of guaranty, the Court will set a valuation hearing.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the parties' motions.

It is ordered that Plaintiff's Motion for Partial Summary Judgment (dkt. no. 85) is granted.

It is further ordered that Plaintiff's Application for Valuation Hearing (dkt. no. 86) is granted. The Court will set a hearing to determine the fair market value of the Property at the time this action was commenced.

It is further ordered that Defendants' Motion for Summary Judgment (dkt. no. 87) is denied.

DATED THIS 16th day of October 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE